UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Johnnie D. Cook,            Case No. 3:21-cv-00355

        Plaintiff

   v.            MEMORANDUM OPINION
           AND ORDER

Mr. Walters, et al.,

        Defendants

## I. INTRODUCTION

*Pro se* Plaintiff Johnnie D. Cook, an Ohio prisoner currently incarcerated at Toledo Correctional Institution ("ToCI"), filed this civil rights action under 42 U.S.C. § 1983 against "Mr. Walters" ("Walters"), Deputy Warden of Operations; Warden Harold May ("May"); "Mr. Robinson" ("Robinson"), Unit Management Chief; Annette Chambers-Smith ("Chambers-Smith"), Director of the Ohio Department of Rehabilitation and Correction ("ODRC"); and Governor Mike DeWine ("Governor DeWine"). Plaintiff has also filed an application to proceed *in forma pauperis* (Doc. No. 1), which I grant by separate order.

For the reasons stated below, I am dismissing Plaintiff's Eighth and Fourteenth Amendment claims pursuant to 28 U.S.C. § 1915(e)(2) and 1915A. Plaintiff's First Amendment claim is dismissed in part.

## II. BACKGROUND

Plaintiff alleges that Defendants have violated his First, Eighth, and Fourteenth Amendment rights as follows: by censoring his mail, retaliating against him for filing a complaint, acting with deliberate indifference to his health and safety by placing him at risk of contracting COVID-19, and

failing to conduct contact tracing, enforce social distancing, and conduct mass testing for COVID-19.

In his Complaint, Plaintiff alleges that Walters violated his right to free speech "when my mail was censored as I wrote a letter regarding the unconstitutional prison conditions." Doc. No. 4 at 5. He also alleges that Walters retaliated against him for filing a grievance regarding the prison conditions. *Id.* at 7-9.

Plaintiff claims that each defendant violated his Eighth Amendment right to be free from cruel and unusual punishments. He asserts that Defendants acted with deliberate indifference in failing to protect his health and safety by placing Plaintiff "at risk [of] getting COVID-19 virus" and by "fail[ing] to combat the spreading of the deadly virus." *See* Doc. 4 at 9-17.

Specifically, he states that Walters allowed large groups "to be fed in the chow hall." *Id.* at 9. He also alleges that Robinson knew that inmates attended recreation in areas that are "not properly sanitized," and "this was brought to the attention [of] Robinson whos[e] responsibility is to oversee all housing units, to provide cleaning supplies." *Id.* at 10. Plaintiff states that Robinson "betrayed his responsibility of the Chief of Unit Management" by failing to comply with the institution's COVID-19 protocols regarding the "Quarantine and Care of Sick Prisoners." *Id.* at 11. Plaintiff also states that May demonstrated deliberate indifference to his health and safety when he "failed to ensure that prison officials are complying with [the institution's COVID-19 protocols]." *Id.* at 13.

In the section of the Complaint concerning ODRC Director Chambers-Smith, Plaintiff alleges that the "ODRC failed to do mass testing," the "ODRC has failed to ensure that full compliance [with the health department's COVID-19 guidelines] were being followed," and the "ODRC knew and disregarded the excessive risk to the health and safety of myself and other inmates." *Id.* at 14-16. Plaintiff also alleges that Governor DeWine failed to protect his health and safety "when he made a public announcement that inmates will not be tested unless that inmate

shows symptoms" and he failed to conduct mass testing. Plaintiff states that "the Governor has enforcement authority over the ODRC policies and procedures that are unconstitutional." *Id.* at 17.

Finally, Plaintiff alleges that Defendants violated his Fourteenth Amendment equal protection rights. In support, he claims that Defendants failed to conduct contact tracing, enforce social distancing, and conduct mass testing. *See id.*

Plaintiff seeks declaratory relief against all Defendants, finding Defendants violated the U.S. Constitution; injunctive relief against Director Chambers-Smith and Governor DeWine, requesting mass COVID-19 testing of all inmates at ToCI; injunctive relief against May, ordering hand sanitizer in all housing units above the sinks; and nominal, compensatory, and punitive damages against Walters, May, and Robinson "in their official and individual capacity." Doc. No. 4 at 19.

### III. STANDARD OF REVIEW

By separate order, I have granted Plaintiff's Motion to Proceed *in Forma Pauperis* (Doc. No. 1). Accordingly, because Plaintiff is proceeding *in forma pauperis* and is seeking redress from a governmental employee, Plaintiff's Complaint is before me for initial screening under 28 U.S.C. §§ 1915(e)(2) and 1915A. Under these statutes, I am expressly required to review all *in forma pauperis* actions and all complaints in which a prisoner seeks redress from a governmental officer or employee, and to dismiss before service any such action that I determine is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

To survive scrutiny under these statutes, a *pro se* complaint must set forth sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *See id.* at 471 (holding that the Fed. R. Civ. P. 12(b)(6) dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) governs dismissals under § 1915(e)(2)(B) and § 1915A). The factual allegations in the pleading "must be enough to raise a right to relief above the speculative level ... on the

3

assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (citations omitted). The Plaintiff must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986). A court must read a *pro se* complaint indulgently. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed.2d 652 (1972). Courts are not required, however, to accept as true factual allegations that are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992)

A claim has facial plausibility when there is enough factual content present to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When a claim lacks "plausibility in th[e] complaint," that cause of action fails to state a claim upon which relief can be granted. *Twombly*, 550 U.S. at 564.

When reviewing a complaint, I must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998) (citing *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996)). I am not required, however, to conjure unpleaded facts or construct claims against defendants on behalf of a *pro se* plaintiff. *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citation omitted); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985).

## IV. ANALYSIS

Plaintiff brings his claim pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the First, Eighth, and Fourteenth Amendments. To state a claim under § 1983, Plaintiff must allege that a person acting under state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42 (1988). Plaintiff must also allege that "the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F.App'x 762, 764 (6th Cir. 2002) (citing *Hall v. United States*, 704 F.2d 246, 251

(6th Cir. 1983)). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

As an initial matter, it is not clear from the Complaint whether Plaintiff is suing Defendants in their official capacities, individual capacities, or both. Although Plaintiff appears to claim in the body of the Complaint that the defendants acted in their official capacity, Plaintiff requests relief against Defendants "in their official and individual capacity." Due to Plaintiff's *pro se* status, however, I will liberally construe Plaintiff's Complaint as stating claims against Defendants in both their official and individual capacities.

### A. Official Capacity Claims

The Supreme Court has held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which is "no different from a suit against the State." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). *See also Grinter*, 532 F.3d at 572. As Walters, May, Robinson, and Chambers-Smith are employed by the ODRC, and thus state employees, Plaintiff's official capacity claims against these defendants are construed as claims against the State of Ohio. *See Peace v. Mohr*, N.D. Ohio No. 4:12CV2283, 2013 U.S. Dist. LEXIS 190092, at *12 (Apr. 29, 2013). Likewise, as Defendant DeWine is Governor of the State of Ohio, and thus a state officer, Plaintiff's official capacity claims against Governor DeWine are also construed as claims against the State of Ohio. *See Smith v. Dewine*, 476 F. Supp. 3d 635, 651 (S.D. Ohio 2020).

The Eleventh Amendment bars suits brought in federal court against a State and its agencies unless the State has waived its sovereign immunity or consented to be sued in federal court. *See Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). The State of Ohio has not waived its sovereign immunity in federal court. *See Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Furthermore, it is well established that the federal statute invoked in

5

this case, 42 U.S.C. § 1983, does not abrogate the Eleventh Amendment. *See Will*, 491 U.S. at 66-67; *Quern v. Jordan*, 440 U.S. 332, 340-41, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979). Thus, Plaintiff's official capacity claims against Defendants are unavailing. Moreover, the Supreme Court has held that neither a state nor its officials acting in their official capacities are "persons" under § 1983. *See Will*, 491 U.S. at 71.

Plaintiff's official capacity claims against Defendants therefore fail to state a claim upon which relief may be granted.

### B. Individual Capacity Claims

Persons sued in their individual capacities under § 1983 can be held liable upon a demonstration that a defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976); *Heyerman v. Cnty. of Calhoun*, 680 F.3d. 642, 647 (6th Cir. 2012) (noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"). A plaintiff must allege "personal involvement of the defendant in causing plaintiff's injury." *Dotson v. Wilkinson*, 477 F. Supp.2d 838, 847 (N.D. Ohio 2007) (citing *Hardin v. Straub*, 954 F.2d 1193, 1196 (6th Cir. 1992)). A defendant must therefore play more than a passive role in the alleged violation or show mere tacit approval of the actions in question. *Rizzo*, 423 U.S. at 371.

### 1. First Amendment

Plaintiff alleges that Defendant Walters retaliated against him for filing a grievance regarding the prison conditions by writing a conduct report on him and recommending Plaintiff be sent to Limited Privilege Housing ("LPH"). Doc. No. 4 at 7-9. He also alleges that Walters violated his right to free speech "when [his] mail was censored as [he] wrote a letter regarding the unconstitutional prison conditions." *Id.* at 5. I construe both these claims as First Amendment retaliation claims.

6

To state a claim for relief under § 1983 for a First Amendment retaliation claim, a plaintiff must show that: "'(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Here, Plaintiff alleges that he filed multiple complaints concerning Walters's "denial to correct the unconstitutional prison conditions." Doc. No. 4 at 7. He claims that on December 15, 2020, he sent a letter to an individual who writes blogs, complaining about the purported unconstitutional prison conditions relating to COVID-19, and on December 16, he received a notice from the "JPay Representative" that his mail was censored. *Id.* at 7-8. He states that later that same day, he was moved to a quarantine block, where inmates were previously denied access to the kiosk that enabled the inmates to send/receive mail and write informal complaints. Then on December 19, he filed an informal complaint against Walters. *Id.*

According to Plaintiff, because he believed the letter was "extremely edited," Plaintiff "appealed that decision seeking to know why [his letter was] edited when prison officials intentionally violated [his] rights." Plaintiff alleges that on December 21, Walters wrote a conduct report on him "out of retaliation due to my complaints." *Id.* at 8. The conduct report stated that Plaintiff was repeatedly violating COVID-19 protocols by not sanitizing the JPay kiosk, and Walters recommended Plaintiff be sent to LPH. According to Plaintiff, on December 23, he was told that he was moving to LPH. Plaintiff states that on December 24, a second conduct report was made when he allegedly refused to move to LPH. *Id.* at 8-9.

An inmate has the First Amendment right to file non-frivolous grievances. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Lewis v. Casey*, 518 U.S. 343, 353 n.3, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). "Abusive or manipulative use of a grievance system," however, is not protected

7

conduct. *King*, 680 F.3d at 699. While filing numerous grievances and informal complaints based on the same conduct may be frivolous, I cannot conclude at this stage in the litigation that Plaintiff's complaints were frivolous. Accordingly, taking the facts stated in the Complaint as true, I must conclude that Plaintiff has pled sufficient facts to plausibly state that he engaged in First Amendment protected conduct.

An adverse action is one that is "capable of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Filing a conduct report against a prisoner can be an adverse action capable of deterring a person of ordinary firmness from exercising the constitutional right to file grievances. *See Thaddeus-X*, 175 F.3d at 396. Additionally, restricting a prisoner's housing by placing him in punitive or administrative segregation also constitutes an adverse action. *Hill*, 630 F.3d at 474 (citing *Dunham-Bey v. Holden*, No. 98-1522, 1999 U.S. App. LEXIS 29712, at *4-5 (6th Cir. Nov. 5, 1999)). Plaintiff alleges that Walters issued a conduct report on Plaintiff that resulted in Plaintiff's move to a limited privilege housing unit because of Plaintiff's complaints. He has therefore pled sufficient facts to plausibly state that Walters took an adverse action against him.

To demonstrate a causal connection between the protected conduct and the adverse action, a plaintiff must show "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394; *see also Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (stating that a plaintiff need only demonstrate "his protected conduct was a motivating factor behind any harm"). Plaintiff appears to allege that he wrote a letter complaining about the purported unconstitutional prison conditions on December 15; he received notice on December 16 that his letter was censored and he was moved to a quarantine block; he complained about the alleged censored mail and filed an informal complaint against Walters on December 19; and within two days, Walters wrote a conduct report on him "out of retaliation due to my complaints." In light of

8

these facts, Plaintiff has sufficiently pled that the adverse action was motivated at least in part by his protected conduct.

Plaintiff's First Amendment retaliation claim therefore survives initial screening.

### 2. Eighth Amendment

Plaintiff contends that Defendants failed to protect his health and safety at ToCI during the current global pandemic. He alleges that Defendants have repeatedly failed to institute measures to prevent the spread of COVID-19. Specifically relating to ODRC Director Chambers-Smith and Governor DeWine, Plaintiff also alleges that the ODRC failed to conduct mass COVID-19 testing at ToCI and Governor DeWine "has enforcement authority over the ODRC policies and procedures that are unconstitutional." Doc. 4 at 14-17.

The Eighth Amendment protects all people from "cruel and unusual punishments." U.S. Const. amend. VIII. "'[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)). Although the Constitution "does not mandate comfortable prisons," it "does [not] permit inhumane ones." *Farmer*, 511 U.S. at 832 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981)).

The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement by "ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care" and taking "reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828 (citing *Helling, supra*; *Wilson v. Seiter*, 501 U.S. 294, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991); *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

To state a claim under the Eighth Amendment's deliberate indifference framework, a prisoner must demonstrate both objective and subjective components. *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020). He must show that (1) "he is incarcerated under conditions posing a substantial risk of serious harm" (objective); and (2) an official must "know[] of and disregard[] an excessive risk to inmate health or safety" (subjective). *Id.* at 840 (quoting *Farmer*, 511 U.S. at 834, 837). In other words, the prisoner must demonstrate he was subjected to an objectively serious prison condition to which a defendant prison official acted with subjective "deliberate indifference." *Farmer*, 511 U.S. at 834.

The subjective component of a claim requires a prisoner to show that a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. An official may not be held liable if he responded reasonably to a known risk, even if the harm ultimately was not averted. *Id.* at 844.

"Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). And only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).

Here, there is no question that Plaintiff has satisfied the objective component of his deliberate indifference claim. Courts have repeatedly found that COVID-19 poses a substantial risk of serious harm to prisoners when the virus enters a prison. *See Wilson*, 961 F.3d at 840 ("The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death."); *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir.2020) ("There is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious or fatal harm to prison inmates."); *Smith v. Dewine*, 476 F. Supp. 3d 635, 662 (S.D. Ohio 2020) ("This Court agrees with the

10

other district courts across the country who have found COVID-19 to be an objectively intolerable risk of harm to prisoners when it enters a prison.").

Plaintiff does not, however, allege facts sufficient to establish the subjective component of his deliberate indifference claim.

Plaintiff's Complaint on its face acknowledges that Defendants have taken actions in response to the risks presented by COVID-19. Plaintiff notes that Governor DeWine ordered mass testing at three Ohio prisons in response to the global pandemic. Doc. No. 4 at 14-15. Plaintiff identifies COVID-19 protocols in place at ToCI, entitled "Quarantine and Care of Sick Prisoners," which include isolating or quarantining prisoners or prison staff members who have either tested positive for the virus or who have been in close contact with an individual testing positive. *Id.* at 9, 11. And in fact, Plaintiff alleges that Walters accused him of violating the institution's COVID-19 protocols, including social distancing, hand-washing, cleaning high-touch areas, and wearing a mask. *Id.* at 8.

Plaintiff also states that when Walters and Robinson learned that an inmate tested positive for the virus in April 2020, the defendants implemented six feet social distancing and allowed "only one inmate to eat at one table." *Id.* at 6. Plaintiff alleges that because this practice was too time consuming and prevented inmates from obtaining their recreation time, Defendants began to allow inmates to eat together. *Id.* Additionally, Plaintiff states that when he demonstrated COVID-19 symptoms, he was tested and placed in quarantine. *Id.* at 10-11. Plaintiff alleges, however, that the "quarantine blocks" are "very restricted," where the prisoners have no access to the unit phones, laundry facilities, and the JPay kiosk for filing complaints, and they are limited to 30 minutes "out of cell time." *Id.* at 6.

In *Wilson*, the Sixth Circuit examined the conditions at the Federal Correctional Institution, Elkton (in the context of a § 2241 action) and concluded that a class of medically-vulnerable inmates was not likely to succeed on the merits of the required subjective component of an Eighth

11

Amendment claim based on COVID-19 circumstances where the Bureau of Prisons ("BOP") implemented similar measures in response to COVID-19 to those Cook acknowledges here, including screening inmates for symptoms, instituting social distancing, quarantining inmates who test positive, providing masks, and implementing cleaning procedures. 961 F.3d at 841. The Sixth Circuit held that the BOP "responded reasonably to the known, serious risks posed by COVID-19 to petitioners at Elkton," and therefore, the inmates could not demonstrate the required deliberate indifference to meet the subjective element of their claim. *Id.* at 840.

Here, on the face of his Complaint, Cook acknowledges that Defendants have taken some actions in response to the risks presented by COVID-19. These procedures are similar to the procedures recently considered by the Sixth Circuit in *Wilson*. And Sixth Circuit precedent "do[es] not require that prison officials take every possible step to address a serious risk of harm." *Id.* at 829.

Although Cook disagrees with the adequacy of the actions taken, and desires that the Defendants do more, Cook has not alleged facts sufficient to demonstrate that Defendants acted with "deliberate indifference" within the meaning of the Eighth Amendment. *See Wilson*, 961 F.3d at 829; *see also Johnson v. Chambers-Smith*, N.D. Ohio No. 4:20CV1361, 2021 U.S. Dist. LEXIS 17442, at *7 (Jan. 29, 2021) (dismissing § 1983 action against ODRC Director Chambers-Smith alleging deliberate indifference relating to COVID-19 circumstances); *Smith,* 476 F. Supp. 3d at 664 (S.D. Ohio 2020) (stating that Plaintiff's claim that the amount of testing shows deliberate indifference is unpersuasive because "an inmate's disagreement with the testing and treatment he has received…does not rise to the level of an Eighth Amendment violation.").

Further, to the extent Plaintiff claims Governor DeWine is liable based upon his general supervisory powers, his claim also fails. *Smith*, 476 F. Supp. 3d at 654 (stating that general supervisory powers are insufficient to subject a state official to suit). "While the Governor may direct broad policy initiatives to various state agencies such as the ODRC, those agencies retain responsibility for direct enforcement of those policies." *Id.*

In the absence of alleged facts from which I could infer that Walters, May, Robinson, Chambers-Smith, or Governor DeWine acted with deliberate indifference to the COVID-19 prison conditions, I find that Plaintiff fails to state a claim under the Eighth Amendment upon which relief can be granted.

### 3. Fourteenth Amendment

Plaintiff alleges Defendants violated his rights to equal protection of the laws under the Fourteenth Amendment by failing to conduct contact tracing, maintain social distancing, and test every inmate for COVID-19. In support, Plaintiff notes that Governor DeWine and the ODRC conducted mass testing of both inmates and staff at Marion Correctional Institution, Pickaway Correctional Institution, and Franklin Medical Center, but not ToCI.

To state an equal protection claim, Plaintiff must "adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *See Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)). Prisoners are not a "protected class" for equal protection purposes. *See Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997); *Dotson*, 477 F.Supp.2d at 851.

Here, Plaintiff has not asserted that he is a member of a protected class. Nor has Plaintiff alleged facts suggesting that he was similarly situated to the inmates at the three other institutions and treated differently than those inmates, without a rational basis. The mere fact that the Governor or the ODRC ordered mass testing at certain prisons while not at ToCI, without more, cannot support an equal protection claim.

Plaintiff's equal protection claim therefore fails on its face.

## V. CONCLUSION

For the reasons stated above, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, I am dismissing the following claims: Plaintiff's First Amendment retaliation claim against Walters in his official capacity and Plaintiff's Eighth and Fourteenth Amendment claims against all Defendants, in their official and individual capacities. Plaintiff's First Amendment retaliation claim against Walters in his individual capacity remains.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge